UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CANDACE S. TIMMIS,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>  Acting Commissioner of Social Security,<br><br>    Defendant. | CAUSE NO.: 1:19-CV-50-HAB |

**OPINION AND ORDER**

Plaintiff Candace S. Timmis seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for Supplemental Security Income (SSI). Plaintiff alleges that she has been disabled since January 1, 2010, due to a variety of physical and mental impairments, including a bulging disc, headaches, arthritis, depression, Ehlers Danlos, and fibromyalgia.

**ANALYSIS**

**A.    The ALJ's Decision**

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for supplemental security income. *See* 42 U.S.C. § 1382c(a)(3)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must

demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 1382c(a)(3)(B).

If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and, if not (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 416.920(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Here, at step one, the ALJ found that Plaintiff had been employed after the alleged disability onset date, but this work did not rise to the level of substantial gainful activity. At step two, the ALJ found that Plaintiff had the severe impairments of cervical facet arthropathy and radiculopathy, status-post anterior cervical discectomy and fusion at C5-C6, lumbar degenerative disc disease, facet arthropathy, and radiculopathy, status-post anterior lumbar interbody fusion and posterior lumbar decompression at L5-S1, degenerative changes in the thoracic spine, fibromyalgia, and bilateral carpal tunnel syndrome. The ALJ stated that these impairments significantly limit the ability to perform basic work activities. The ALJ found that for other impairments that had been diagnosed, including hypothyroidism, hypoparathyroidism, and right kidney mass, obstructive

chronic bronchitis, degenerative changes at the left thumb basila joint, Ehler-Danlos syndrome and headaches, there were no significant objective medical findings to support more than minimal limitations on the Plaintiff's ability to perform work activities arising from these impairments.

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 19.) The ALJ considered listings 1.02 (Major dysfunction of a joint), 11.04B (Peripheral Neuropathies), 1.04 (Disorders of the spine), and 1.02 and 14.06 to address fibromyalgia (since there is no listing for this condition).

Before moving to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except the claimant could occasionally operate foot controls bilaterally. The RFC included numerous postural and environmental limitations and noted that Plaintiff could only occasionally balance, stoop, kneel, crouch, and crawl. She could also occasionally operate a motor vehicle. Plaintiff could not reach overhead bilaterally and was limited to frequent handling, fingering and feeling bilaterally.

Based on the above RFC and her hypothetical questions to the vocational expert, the ALJ found Plaintiff to be capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.

**B. Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his

assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**C.     Residual Functional Capacity**

A claimant's RFC, which is the most the claimant can still do in a work setting despite her limitations, is based on all "the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' — i.e., opinions about what the individual can still do despite his or her impairments— submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p. When assessing RFC, an ALJ must "consider the limitations imposed by all impairments, severe and non-severe." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019); 20 C.F.R. § 416.945. The duty to analyze non-severe impairments in formulating a claimant's RFC to be used at steps four and five is fundamental to the disability programs under the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 150-51 (1987) (emphasizing duty of Commissioner, when there is at least one severe impairment, to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity") (quoting 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(F) (1982 ed. and Supp. III)). "A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

The RFC assessment must address exertional and nonexertional capacities of the individual, expressed in terms of work-related functions. SSR 96-8p. Work-related mental activities generally required in a competitive, remunerative job include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. SSR 96-8p.

As required by the regulations, before proceeding to step four of the analysis, the ALJ determined Plaintiff's RFC. In connection with the RFC assessment, the ALJ referenced the State agency consultants who evaluated Plaintiff initially and upon reconsideration. The ALJ noted that, mentally, Plaintiff was found to have mild restrictions in her ability to perform activities of daily living and in social functioning, and a moderate restriction in concentration, persistence and pace. (R. 24.) Plaintiff was found to be able to perform simple, repetitive tasks on a sustained basis, without special consideration. The ALJ gave great weight to the portion of the opinion regarding Plaintiff's mental limitations, on grounds that her mental status examinations were generally unremarkable, and Plaintiff testified at the hearing that she did not have any mental health issues. (R. 25.)

The ALJ also considered the opinion of the psychological consultative examiner, Dr. Boen, who opined on August 3, 2015, that Plaintiff could understand instructions, but would have trouble remembering and would not be able to concentrate and stay on task. Additionally, he opined that she would have trouble getting along with co-workers and supervisors. The ALJ concluded that Plaintiff's mental impairments were not as

restrictive as Dr. Boen assessed. Although Dr. Boen was a specialist in the mental health field, he only examined Plaintiff one time. Accordingly, the ALJ placed more emphasis on the mental status examinations throughout the record and on Plaintiff's own statement that her mental impairments did not affect her ability to work. The ALJ concluded, "[t]o the extent that this examination is consistent with the medical evidence of record, this opinion is afforded partial weight." (R. 25.)

The ALJ did not include any mental health related limitations in Plaintiff's RFC. Presumably, this was because the ALJ accepted the opinions from the State Agency consultants that Plaintiff would be able to perform simple, repetitive tasks on a sustained basis, without special consideration, and rejected the opinion from Dr. Boen that she would not be able to concentrate and stay on task. However, the Court finds that, in the course of considering these opinions, the ALJ did not explain how he considered and resolved material inconsistencies or ambiguities in the evidence in the case record (required by SSR 96-8p) of which there were several. For example, the State agency evaluators indicated that Plaintiff had moderate restrictions in concentration, persistence and pace, but then also determined that she would be able to perform simple, repetitive tasks on a sustained basis, without special consideration. They rejected Dr. Boen's more restrictive assessment based on Plaintiff's "ADLs" (activities of daily living), stating that they "do not support that the [claimant] would not be able to concentrate or stay on task at a job." (R. 111.)

The Court will begin with the statement about Plaintiff's ADL's as it relates to Dr. Boen's opinion, which the ALJ seems to have adopted, as he gave great weight to the

7

State agency consultants' opinions about Plaintiff's mental limitations. The daily activities cited include the ability to perform personal care without reminders, prepare frozen and pre-made meals, perform some housework, shop once or twice a month for about thirty minutes to an hour, and watch television and do crossword puzzles. There is no explanation how these activities, or any others that are cited, are consistent with an ability to concentrate and stay on task in an ordinary work setting on a regular and continuing basis. It is not clear, absent further explanation, how such activities could be thought to contradict a finding of compromised concentration, memory, and task completion during an eight-hour workday.

Moreover, the statement by the State agency consultants that Plaintiff would be able to perform simple, repetitive tasks on a sustained basis without special consideration is not reconciled with other findings in the same report. Namely, that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, and in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 111.) The Seventh Circuit has indicated that "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). The regulations describe unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a) (stating that a person can usually learn a job in the

unskilled work category in thirty days). This is unrelated to whether a person with limitations in concentration, persistence, and pace "can perform such work." *Varga v. Colvin*, 794 F.3d 567, 814 (7th Cir. 2015); *see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.").

Thus, stating that Plaintiff could perform simple repetitive tasks on a sustained basis without special consideration speaks to the skill level of the positions she could potentially hold. The statement also appears to suggest that, so long as the job was unskilled, Plaintiff would be able to sustain her concentration and complete her tasks in a timely manner. However, without further analysis on this point, the Court cannot find that the ALJ has articulated his assessment of the evidence in such a way to enable the Court to trace the path of his reasoning and to assure the Court that he considered the important evidence.

This uncertainty concerning the consideration of important evidence is further exacerbated when reviewing the ALJ's other cited reasons for discounting the opinions regarding Plaintiff's concentration and pace. The ALJ stated that he was giving more weight to Plaintiff's own statement from the hearing that she did not have any mental health issues. Plaintiff's statement is odd, given her history of counseling and treatment related to her mental health. Additionally, when Plaintiff completed her Function Report for the SSA, she checked boxes to indicate that her illnesses and conditions impacted her memory, task completion, concentration, understanding, following instructions, and getting along with others. (R. 246.) At the very least, the statement from her hearing

9

required additional follow-up or clarification, particularly if the ALJ intended to rely on it to discount medical opinions about her concentration and task completion. Finally, limitations regarding concentration, persistence and pace are not necessarily attributed to mental impairments alone. Here, the record is replete with Plaintiff's complaints of significant pain. Accordingly, the ALJ was required to consider to what extent Plaintiff's pain was a contributing factor to her moderate restrictions in concentration, persistence and pace.

The ALJ also purported to rely on mental status exams that were "generally unremarkable" when assigning weight to the various medical opinions. (R. 25.) The ALJ cited to pages 23–28 of Exhibit B12F. It was certainly appropriate for the ALJ to consider whether the medical opinions were consistent with other evidence in the record. However, this lone statement about the exam findings does not adequately detail how these exams contradicted or supported the opinion evidence. The Court notes that on page 28 of the Exhibit, the examiner found that in the areas of attention/concentration, "Problem[s] Exist." (R. 655.) Thus, while Plaintiff may have been, as the exam revealed, exhibiting normal thought content, having coherent thought process and no perceptual disturbances, and been oriented, those findings are not what matters to concentration, persistence or pace. Rather, the problematic area of functioning noted during the exam was the same area cited by Dr. Boen and the State agency consultants. In other words, the exam findings appear to support a functional limitation in the area of attention and concentration. In this context, stating that the mental status exams were "generally

unremarkable" provides little assurance that the ALJ considered the important evidence related to Plaintiff's functional limitations.

The Court finds that this matter should be reversed and remanded for the ALJ to reconsider the RFC, particularly the impact of any moderate restrictions in concentration, persistence, or pace.

## CONCLUSION

For the reasons stated above, the Decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this Opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

SO ORDERED on March 24, 2020.

                                          s/ *Holly A. Brady*
                                          JUDGE HOLLY A. BRADY
                                          UNITED STATES DISTRICT COURT